JAMES M. BLACKWELL, EDWARD A. WHITTEMORE and WIL-
LIAM CAHART *v.* ANDREW RANKIN, GEORGE H. LEE and
others.

The quasi lien of the creditors of a partnership on its property, as against creditors
of individual members of the partnership, gives equity jurisdiction for the purpose
of protecting the members of the partnership.

The affidavit required by the statute to be made by the plaintiff, on his taking a
judgment by confession on bond and warrant of attorney, must show a debt exist-
ing at the time of the entry of the judgment.

A. and B., partners in trade, confessed a judgment to C. The affidavit of C. stated
the consideration to be, in part, notes of A. and B. endorsed by C. and not due; in
part, notes of other persons given to A. and B. and endorsed by C. and not due;
and in part, notes lent by C. to A. and B. for their accommodation and not due. Ex-
ecution was issued on the judgment and levied on all the property of the partner-
ship. On bill filed by D., a creditor without judgment of the partnership of A. and
B,, C. was restrained by injunction from proceeding to a sale under his execution.
And on motion, without answer, to dissolve the injunction, the motion was de-
nied.

On the 8th of April 1848, Andrew Rankin and George H.
Lee, partners in trade under the name of Rankin and Lee, gave
a bond and a warrant of attorney to confess judgment thereon,
to Wm. Lee, in the penal sum of $20,000, conditioned for the pay-
ment of $10,663 ; and judgment was confessed thereon on the said
8th of April 1848. The affidavit required by the statute, made
by Wm. Lee, stated the true consideration of the bond to be to
secure the said Wm. Lee for certain promissory notes which he
had endorsed for Rankin and Lee, as follows :

| Note given by said Wm. Lee, | due | Apr. 24, 1848, | for | $175 |
|---|---|---|---|---|
| "   of said Wm. Lee, | " | May 22, 1848, | " | 390 |
| "   "   " | " | June 7, 1848, | " | 300 |
| "   "   " | " | June 20, 1848, | " | 490 |
| "   "   " | " | June 21, 1848, | " | 480 |
| "   "   " | " | Aug. 22, 1848, | " | 1100 |
| "   "   " | " | Aug. 10, 1848, | " | 150 |

On bond and mortgage executed by the said Wm. Lee
to Saml. Cook, for $1672, given upon land of the

said Wm. Lee, dated May 29th, 1845, payable in
one year, with interest, which money was then and
there lent by Saml. Cook to Rankin and Lee, inte-
rest on said bond being paid to Nov. 1849,                    1675
One note of Alfred Mead endorsed by said Wm. Lee,
    due May 5th, 1848,                                         490
One note of Alfred Mead      "       "       "
    due May 5th, 1848,                                         500
One note of Alfred Mead      "       "       "
    due May 25th, 1848,                                        339 21
One note of Alfred Mead      "       "       "
    due July 28th, 1848,                                       125
One note of Rankin and Lee   "       "       "
    due April 20th, 1848,                                      150
One note of Rankin and Lee   "       "       "
    due May 30th, 1848,                                        600
One note of Rankin and Lee   "       "       "
    due May 11th, 1848,                                        100
One note of Rankin and Lee   "       "       "
    due May 27th, 1848,                                        550
One note of Rankin and Lee   "       "       "
    due May 26th, 1848,                                        100
One note of Rankin and Lee   "       "       "
    due June 30th, 1848,                                       600
One note of Rankin and Lee   "       "       "
    due June 27th, 1848,                                       500
One note of Rankin and Lee   "       "       "
    due July 30th, 1848,                                       100
One note of Rankin and Lee   "       "       "
    due July 1st, 1848,                                        300
One note of Rankin and Lee   "       "       "
    due July 30th, 1848,                                       475
One joint note of Andrew Rankin, Wm. Lee, Alfred
    and George H. Lee, to Saml. Cook, for $650, with
    interest, dated Dec. 9th, 1845, interest paid to Dec.
    9th, 1847,                                                 650
One note of Andrew Rankin endorsed by Wm. Lee,
    due July 28th, 1848,                                       296 69

" which notes, bond and mortgage hath been assumed
" by Wm. Lee, who hath agreed with Rankin and
" Lee to pay the same and save them harmless."

On the 10th of April, 1848, Rankin and Lee confessed judgment in favor of Wm. Rankin, for $2116,75. The affidavit states the consideration to be four notes loaned by Wm. Rankin to Rankin and Lee; one for $500, due that day; one for $521-60, due June 10th, 1848; one for $470 15, due June 16, 1848; and one for $568 45, due July 7th, 1848.

On the same 10th of April, 1848, Rankin and Lee confessed another judgment in favor of Wm. Rankin, the consideration of which is stated in the affidavit to be an endorsement by Wm. Rankin of Rankin and Lee's note for their accommodation, due July 8th, 1848, for $566 04.

On the same day, April 10th, 1848, Rankin and Lee confessed a judgment to Jonas Wood for $832 95. The consideration stated in the affidavit is his said Wood's two notes to Rankin and Lee, for their accommodation; one for $373 21, due May 18th, 1848, given for the accommodation of Rankin and Lee; one given to Rankin and Lee for their accommodation, for $496 23, due June 20th, 1848.

On the same 10th of April, 1848, Rankin and Lee confessed a judgment to Elias Plum, for $795 51. The consideration stated in the affidavit is money lent.

On the same day Andrew Rankin confessed a judgment to Elias Plum for $298 28. The consideration stated in the affidavit is Phem's acceptance of A. Rankin's draft for $298 28, due May 13th, 1848.

On the same day Rankin and Lee confessed another judgment to Wm. Lee for $5000. The consideration stated in the affidavit is to indemnify Lee against loss and damage by reason of his having endorsed a large amount of business paper, notes and

bills of exchange of the said Andrew Rankin and George H. Lee, to enable them to get their bills and notes discounted and passed away, amounting in all to $17,398 44, whereof $3253 13 is past due and has not been paid.

On the same day Rankin and Lee confessed another judgment to Wm. Lee for $550; the consideration for which, stated in the affidavit, is money lent.

On the same day Rankin and Lee confessed a judgment to Caroline Hayden for $206; the consideration for which, stated in the affidavit, is money lent.

On the same day George H. Lee confessed a judgment to Caroline Hayden for $143 25; the consideration for which, stated in the affidavit is money lent, loaned, &c.

Executions were issued on all these judgments, and the sheriff, by virtue thereof, levied on all the property of the said firm of Rankin and Lee, and advertised the same for sale.

In this state of things, James M. Blackwell, Edward A. Whittemore and William Cahart, partners in trade, creditors of the firm of Rankin and Lee, who had commenced suit, but had not obtained judgment for their demand, exhibited their bill against Andrew Rankin, George H. Lee, William Lee, William Rankin, Jonas Wood, Elias Plum and Caroline Hayden, charging combination and confederacy to defraud the complainants and others, the *bona fide* creditors of the said firm of Rankin and Lee, and to take into their hands the whole of the property of the said firm; and that the said judgments were confessed fraudulently, and praying that they may be decreed to be void &c.; and praying an injunction restraining the sale.

The injunction prayed was allowed.

A motion was made, without answer, to dissolve the injunction.

*J. P. Bradley* and *A. Whitehead* in support of the motion; they cited 2 *John Ch.* 144; 20 *John's Rep.* 296; 1 *Harr. Rep.*

138, 268, 364; 16 *John Rep.* 149; 4 *Halst. Rep.* 93; 1 *Green's Ch.* 258 ; 5 *Halst. Rep.* 348; 3 *Green's Rep.* 373.

*L. C. Grover* and *C. Parker* contra. They cited *Rev. Stat.* 946, sec. 5; 2 *Halst. Rep.* 168 ; 1 *South. Rep.* 351; 1 *Halst. Rep.* 93.

THE CHANCELLOR. The Statute, *Rev. Stat.* 946, sec. 5, enacts, that no judgment shall be entered on a warrant of attorney to confess such judgment, unless the plaintiff or his attorney shall produce, at the time of confessing such judgment, an affidavit of the plaintiff, his attorney or agent of the true consideration of the instrument of writing or demand for which the said judgment shall be confessed; which affidavit shall set forth, that the debt or demand for which the judgment shall be confessed is justly and honestly due and owing to the person or persons to whom the judgment is confessed, and that the said judgment is not confessed to answer any fraudulent intent or purpose, or to protect the property of the defendant from his other creditors.

A number of cases have been before our courts in which the language and effect of this statute have been considered.

In the case of *Scudder* v. *Scudder* and *Coryell*, 5 *Halst. Rep.* 340, one objection to the affidavit was that it was made a day before the bond on which the judgment was confessed became payable, and was therefore prematurely made ; the statute requiring the affidavit to set forth that the debt for which the judgment is confessed is justly due and owing. The objection was not that the debt for which the bond and warrant to confess judgment were given was not due, but that the affidavit to authorize judgment to be entered for the debt so due, was made the day before the bond on which judgment was to be confessed for the debt so due was payable. The bond was payable one day after date, and, by oversight, the affidavit of the preexisting debt, and of its being due, was made the same day the bond and warrant of attorney to confess judgment thereon were given. In reference to this objection, Ch. J. *Ewing* said, the design of the statute was simply to prevent the entering up of judgments where no indebtedness existed really and in good faith, and to defeat fraudulent purposes ; and that the making the affidavit one day before the bond became

payable tends to no such evil as to vitiate the judgment. He said, further, that the word " due " sometimes means *debitum in presenti solvendum in futuro,* and sometimes that the day of payment has passed; and that it appears to have been used in the former sense, as it is connected with a word of` like signification, the words being " due and owing." He also said, in reference to this objection, that the statute provided that no such judgment should be reversed for defect of form in the entry thereof. Just. *Ford* said it was a defect of form only of which third persons could not take advantage ; but that courts allowed judgments to be impeached for fraud or covin, on the application of creditors, and have exercised an equitable power, immemorially, to inquire into them for the purpose of to set them aside ; for fraud and covin will vitiate every kind of act ; and fraudulent judgments are made as void against creditors as fraudulent conveyances. The motion to set aside the judgment was denied ; but leave was given therefore a feigned issue to try the question of fraud. The application to set aside the judgment was by judgment creditors.

The case of *Warwich* against *Matlack,* in the Supreme Court, 2 *Halst. Rep.* 165, was this : a bond was given, dated Jany. 22, 1821, in the penal sum of $2,800, conditioned for the payment of $1,400 in three years, with interest annually, with a warrant of attorney to confess judgment thereon. In May 1823, judgment was entered, by virtue of the warrant, for the penalty, the annual interest not being paid. The affidavit stated that the true consideration of the bond was for land sold, and that the debt was justly due and owing. A motion was made to set aside the judgment, on the ground that the debt was not due and owing. It was answered, that on the non-payment of the interest the penalty of the bond was forfeited ; that the debt then became due, and judgment might be entered for the penalty ; that though judgment had been entered for the penalty, execution had been issued for the interest only. The judgment was sustained. The application to set aside the judgment was made by a purchaser of the land from the obligor, which would be bound by the judgment.

In *Reed* against *Bainbridge,* in the Supreme Court, 1 *South.*

*Rep.* 351, Bainbridge, on the 12th of Feb, 1814, gave to Reed a bond and a warrant of attorney to confess judgment thereon. On the 14th of Feb., 1814, Reed, by endorsement under seal, assigned the bond to Thorn. On the 18th of Feb., 1814, judgment was entered on the bond, by virtue of the warrant of attorney, in the name of Reed. In April, 1814, one Schenck agreed with Bainbridge to buy his farm, and took possession of it; and on the 9th of May, 1814, received a deed for it and paid the consideration money. A motion was made on behalf of Schenck to set aside the judgment and execution, on two grounds : first, because the judgment was irregularly entered : second, that there was fraud in the bond and warrant and judgment. The judgment was set aside.

In *Milnor* v. *Milnor,* 4 *Halst. Rep.* 93, judgment on bond and warrant had been entered Feb. 16th, 1827, against John Milnor, who had died insolvent three days before. The judgment was set aside on motion in behalf of McNeely, a creditor of J. Milnor, who had not obtained judgment. The Court said that McNeely was admitted, in the state of the case, to be a creditor; and that he was directly affected by the judgment.

In *Latham* v. *Lawrence,* 6 *Halst.* 322, decided in 1830, the judgment was entered on a bond and warrant, dated July 7th, 1827. The affidavit stated that the true consideration of the bond was a note, dated October 18th, 1823, for $120, payable to Latham six. months after date, with interest; another note, dated April 2nd, 1825, for $90, payable to Latham four months after date, with interest; both of which notes were drawn by the said Lawrence; and also for a book account against the said Lawrence, amounting to $128 54; and that the debt for which the judgment is confessed is justly due and owing; and that the judgment is not confessed to answer any fraudulent purpose, or to protect the property of the defendant from his creditors.

On motion of judgment creditors of Lawrence, the judgment was set aside for defective affidavit.

*Ch. Just. Ewing* said the affidavit kept the word of promise to the ear, but broke it to the hope.

In *Hoyt* v. *Hoyt,* 1 *Harr. Rep.* 139, decided in 1837, it ap-

peared that a part of the consideration was the plaintiff's promissory note advanced to the defendant, to be used, and which was actually appropriated in payment for certain chattels by him bought, and agreed beforehand to be paid for, in part, in this way.    The consideration stated in the affidavit was money lent. Justice Ryerson said the question was, whether the advance of a promissory note payable at a future day was equivalent to an advance of cash, and to be treated as such in law proceedings. He said that if an advance of a note may be treated as an advance of cash, the money may be considered as justly due, if by the contract of parties it was made due and payable on demand. That he saw no objection to giving a judgment to a party in payment of his negotiable paper not yet arrived at maturity. This remark must be taken as being made with reference to the facts of the case, and as meaning if it be shown that the paper was given to a third person for something received by the defendant in the judgment.    It cannot mean that A may borrow B's note and keep it himself, and confess a judgment to B for the amount of it.    If that could be done the Statute might as well be repealed.

He said he was not entirely satisfied with the result to which he had arrived.

*Ch. J. Hornblower* overcomes the difficulty in his own mind by saying that it was admitted that the understanding and agreement of all the parties was that the plaintiff was to pay, as he has paid, the debt for which the note was given.    But the validity of the judgment, or the sufficiency of the affidavit at the time the judgment was entered, cannot depend upon whether the plaintiff afterwards pays the note or not.    He may not pay it, or he may pay it out of the very money which he raises by the sale, under the judgment, of the defendant's property ; in which case the money was never at any time due him.    Suppose he becomes insolvent and fails to pay his note, shall the defendant in judgment pay it twice ?    The Legislature never contemplated leaving the door open to such hazards, and to the frauds which would result from the latitude some seem disposed to take with the language of the statute.

This case decides, and with great hesitation, that if A gives

his note to B, and B endorses it to another and gets goods for it, he may confess a judgment to A for the amount of it before it becomes due and payable by A.

But the case of a judgment confessed by A to B, to-day, because B has endorsed A's note, payable three or six months hence, is a very different case.

It is an abuse of language to say that because I endorse your note to-day, payable three months hence, to be used by you, you are indebted to me to-day for the amount of it; and that it is a debt due and owing to me to-day.

No such idea was ever entertained by the courts; it would encourage all manner of device to cheat the plain design of the statute.

This review of the decisions in our Supreme Court on this statute shows that the affidavit must make out a debt existing at the time of the confession of the judgment; and that if the facts stated in the affidavit show that there was no existing debt, the allegation in the affidavit that the debt is due and owing amounts to nothing. And indeed the object of the statute could not be attained if the plaintiff's opinion that the facts sworn to make him a creditor *in presenti* was suffered to sustain the judgment.

Next, on whose application may a judgment confessed and entered without the proper affidavit be set aside?

One of the judgments in this case is confessed by Andrew Rankin, one of the firm, for his individual debt, to Elias Plum. Another is confessed by George·H. Lee, the other partner, for his individual debt, to Caroline Hayden. And executions on these debts have been levied on the property of the firm.

In *Moody* against *A.* and *H. Payne,* 2 *John. Chan. Rep.* 588, 9, a bill was filed for an account of the partnership concern, after a dissolution, stating a number of existing debts against the partnership, and its insolvency; and to enjoin a sale at law under a judgment confessed by one of the partners for his separate debt, due the other partners, and under which judgment partnership

property had been seized. The injunction was allowed. The answer denied the insolvency, and some of the partnership debts, and admitted others. On motion to dissolve Chancellor Kent dissolved the injunction. He says, that the execution at law only takes the interest of the partner who is sued, subject to the partnership debts; that there are difficulties in selling such an uncertain interest before it is ascertained, by taking the accounts in this court, what is the interest to be sold. That Lord Eldon felt the weight of that difficulty, &c.; and that he did not know that this court had ever undertaken to stop an execution at law in such a case, &c. That the cases referred to by Maddock do not warrant the conclusion that chancery stops such executions by injunction. That courts of law are in the constant practice of awarding executions in such cases; and that chancery does not, ordinarily, and upon such general grounds, enjoin the sale at law.

Justice Story, in 1 *Story's Eq. Sec.* 678, refers to this decision, and dissents from it. He says that the reasons given by Chancellor Kent do not seem a sufficient ground on which such an injunction is to be denied. That if the debtor partner, on a final adjustment of the accounts, will have no interest in the partnership funds, and the other partners have a lien upon the funds, not only for the debts of the partnership, but for the balance ultimately due to them, a sale may most materially affect their rights; for it may be extremely difficult to follow the property into the hands of the various vendees; and their lien may perhaps be displaced, or other equities arise by intermediate *bona fide* sales of the property by the vendees, to other purchasers without notice; and the partners may have to sustain all the chances of any supervening insolvencies of the immediate vendees. That, to prevent multiplicity of suits, and unpardonable mischiefs, and to insure an unquestionable lien (the lien he has before spoken of for the debts of the partnership), it would seem perfectly proper, in a case of this kind, to restrain the sale. And this, he says, seems, notwithstanding the doubts suggested by Chancellor Kent, to be the true result of the English decisions on the subject, which do not distinguish between the case of an assignee of a partner and that of an executor or administra-

tor of a partner or of a sheriff, (meaning under a judgment against a partner; and the vendee at the sheriff's sale would be nothing more than an assignee of the partner,) or of an assignee in bankruptcy.

These views are very persuasive; and are well calculated to remove doubts, even in the case presented in *Moody* v. *Payne.*

But in that case the insolvency of the partnership was denied by the answer. In this case it must be taken as admitted; no answer having been put in. In this case, then, it is not a peradventure, but it is certain that neither has any interest in the partnership funds. And yet each partner has confessed a judgment for his separate debt; and executions thereon have been levied on the partnership property. I cannot doubt that in such a case Chancellor Kent would have retained the injunction.

In 2 *Story's Eq. Sec.* 1253, it is said, that the partnership property is deemed a trust fund, primarily to be applied to the discharge of the partnership debts. That a long series of authorities has established this equity of the joint creditors, *to be* worked out through the medium of the partners; that is to say, the partners have a right, *inter se,* to have the partnership property first applied to the discharge of the partnership debts, and no partner has a right except to his own share of the residue; and the joint creditors are, in case of insolvency, substituted in equity to the rights of the partners, as being the ultimate *cestuis que trust* of the fund to the extent of the joint debts. That the creditors, indeed, have no lien; but they have something approaching to a lien; that is, they have a right to sue at law and by judgment and execution to obtain possession of the property; and in equity they have a right to follow it as a trust, into the possession of all persons who have not a superior title. But in the mean time the creditors cannot prevent the partners from transferring it by a *bona fide* alienation.

See, also, 1 *Story's Eq. Sec.* 675.

In the case of a judgment and execution against one partner for his individual debt, a levy can be made only on his interest, if any, in the partnership property, after the payment of the partnership debts. The sale does not transfer any part of the joint property so as to entitle the purchaser to take it away, but

the purchaser becomes only a tenant in common with the other partner. 1 *Story's Eq. Sec.* 677. In an ordinary case, therefore, the sale by the sheriff might work no injury to the creditors of the partnership. But when each partner confesses a judgment, and executions are issued and levied on all the interest of each partner in the partnership goods, and the partnership goods themselves are advertised to be sold, not the interest of the respective partners therein after paying the debts of the firm, it is manifest that the intention is that the goods shall be delivered to the purchasers; and it being a case where the firm itself is insolvent, it is manifest that the interest of the creditors of the firm will be sacrificed; and there being no partner left to represent the interest of the partnership creditors through whom they can assert their interests, it seems to me an extraordinary proposition that the creditors of the partnership have no means, and the courts no power to prevent such a sacrifice.

1 *Barbour,* 480.

The affidavit of the consideration of the judgment of April 8, 1848, for the penal sum of $20,000, in favor of Wm. Lee against Andrew Rankin and George H. Lee, states the consideration to be " to secure certain promissory notes which the said Wm. Lee had endorsed for the accommodation of Rankin and Lee, as follows;" and then states, first, certain notes " given by the said Lee; next, a bond and mortgage executed by the said Wm. Lee to Saml. Cook, for $1675, given upon land of the said Wm. Lee, dated May 29, 1845, which money was then and there lent by Saml. Cook to Rankin and Lee,                    $1675 00
And, after stating other matters, states one joint note of Andrew Rankin, Wm. Lee, Alfred and George H. Lee, to Saml. Cook, for $650 00, dated Dec. 9, 1845,     650 00

The bill states that in May and Dec., 1845, when the said bond and mortgage, and the said joint note above mentioned were given to Saml. Cook, the firm of Rankin and Lee consisted of the said Andrew Rankin and William Lee himself. . . . If this be true, and for the present inquiry I must take it to be true, there is nothing in the case to show how the present firm of Rankin and Lee, (composed of Andrew Rankin and George H. Lee), is liable for these sums of $1675 and $650.

If it be said that George H. Lee, of the last firm of Rankin and Lee, also signed the bond and warrant to confess this judgment, it may be answered that if he knew that these matters were to be included in the judgment, it presents a very suspicious state of things ; and among the surmises that might be made in reference to it, perhaps not the least probable is, that though this young man, the son of Wm. Lee, became nominally the partner, instead of his father's name being continued, yet that the father was really, and so far as capital was concerned, the partner ; and if so, the whole matter of these judgments confessed to Wm. Lee is an attempt to withdraw his capital, perhaps the only capital on which the partnership business was done, from responsibility for the partnership debts. It may be further remarked, that if George H. Lee was really as well as nominally the partner, and if he knew and consented that these matters should be included in the judgment to Wm. Lee, it could only be with some ulterior and fraudulent design. I cannot consider a judgment for this part of the consideration stated as standing on any better ground than a judgment confessed by one partner for his separate debt.

Another item of the consideration of this judgment as stated, is Andrew Rankin's note endorsed by Wm. Lee, due July 28, 1848, for - - - - - - - - $396 69

This is subject to the same remarks, and must also be considered as a judgment for the separate debt of Andrew Rankin.

Then there is a judgment confessed by Andrew Rankin and Geo. H. Lee, partners, to Wm. Lee, a part of the consideration of which is, "notes given by Wm. Lee," none of which was due,                                                                                                         $3085 00

Another part, business paper of Alfred Mead, a good man, as the bill states, endorsed by Wm. Lee, and not due,                                                                                                         1460 00

Another part, notes of Rankin and Lee, endorsed by Wm. Lee, and not due,                                                                                 3475 00

And the other part of the consideration stated is, at best, the separate debt of Andrew Rankin                                             2721 69

And a judgment confessed by Andrew Rankin alone, and of course for his separate debt, for                                                 298 28

And a judgment confessed by George H. Lee alone,
 and of course for his separate debt, for   143 25

The quasi lien of the creditors of a partnership on its property, as against creditors of individual members of the partnership, gives this court jurisdiction for the purpose of protecting the creditors of the partnership.

*Story*, supra, 1 *Barbour*, 480.

The judgment in favor of Lee, if bad in part, would, at law be set aside altogether.

This court is not called upon to divide it, and let it stand for part, and let a sale be made under it in part; but might, in the progress of matters in this court, deal with its different parts according to equity.

On the same day, another judgment was confessed by Rankin and Lee to Wm. Lee, for $5000, the consideration for which, as stated in the affidavit, is to indemnify him against loss and damage by reason of his having endorsed a large amount of business paper, notes and bills of exchange of the said Andrew Rankin and George H. Lee, to enable them to get their bills and notes discounted and passed away, amounting in all to $17-398 44, whereof $3,253 13 is past due, and has not been paid.

This, as I understand it, is for business paper made by other persons, payable to Rankin and Lee, and on which Wm. Lee endorsed his name to aid them in getting the paper discounted. And on this state of things, and without having paid $1, he makes affidavit that $5000 is due to him. It does not even appear that any of the paper was discounted; and if it was, and if he had been fixed as endorser, the makers of the notes, who may be all good, for aught that appears, would, on his paying the paper, be liable to him. It cannot be expected that the court will permit Mr. Lee to proceed on such a judgment as this to withdraw the partnership property from the partnership creditors.

It seems clear to me that the intention of the parties to these proceedings has been to effect, by means of judgments, an assignment of all the partnership property, to the exclusion of the partnership creditors. Such an assignment is void, by statute.

The injunction will be dissolved as to the judgment and exe-

cution of Elias Plum against Rankin & Lee, for $795 51; and as to the judgment and execution of Caroline Hayden against Rankin & Lee for $206; and as to the sale of the separate property of Andrew Rankin under the judgment and execution of Elias Plum against them; and as to the sale of the separate property of George H. Lee under the judgment and execution of Caroline Hayden against him. As to all the other judgments and executions, the motion to dissolve the injunction is denied.

Order accordingly.